Hamilton et al. *v.* Wilder et al.

---

ALEXANDER HAMILTON AND GOUVENEUR MORRIS *v.* ABEL K. WILDER AND HUGH H. HENRY.

*Service of process on non-resident railroad trustees. Audita querela. Execution.*

The trustees of the Vermont Valley Railroad Company, three in number, two of them residing without this State, in March, 1856, duly appointed G. their agent for the service of process against them, in conformity with the act of 1854, No. 29, p. 32, but though they recognized him as their agent for that purpose until after February, 1857, they did not renew the certificate of his appointment in January, 1857, as the statute required. In February, 1857, they were summoned as trustees of O. in a suit against him, and the only service made upon them was by an attested copy of the writ left by the officer with G., as their agent; *Held*, that this amounted to to the same as personal service upon the non-resident trustees, and that upon their non-appearance they were properly defaulted.

*Held*, also, that though no personal service was made upon the resident trustee, and no judgment was taken against him, yet that constituted no ground for sustaining *audita querela* to set aside the judgment against the others.

A judgment having been rendered against O. as defendant, and H. and M. as his trustees, an execution was issued thereon in which the judgment was described as rendered against "O. and H. and M., trustees of O., debtors;" the precept was simply to levy on the goods, chattels or lands of the debtors, etc., etc.; *Held*, that the execution was to be regarded as against the trustees, and as such was sufficient.

AUDITA QUERELA to set aside a judgment rendered in favor of the defendant Wilder against the plaintiffs, as trustees of one Osgood, by a justice of the peace.

It appeared that a writ was issued returnable before John H. Campbell, Esq., justice of the peace, in favor of Wilder against

Hamilton et al. *v.* Wilder et al.

Osgood, in which the plaintiffs and the defendant Henry, as trustees of the Vermont Valley Railroad Company, were summoned as trustees of Osgood; that this writ, on the 28th of February, 1857, was served on the trustees therein named, by delivering to Henry F. Green, their legal agent, a true and attested copy thereof in due form; that on the return day of the writ a default was taken against Osgood as defendant, and against the complainants as his trustees; and an execution was issued, and at the time of the commencement of this action was in the officer's hands for collection, in the following form:

"STATE OF VERMONT.

Windham County, ss.    To any sheriff or constable in the State.

Greeting.

52.87    Whereas Abel K. Wilder, creditor, by the considera-
2.60    tion of John H. Campbell, Esq., one of the justices
————    of the peace within and for the county of Windham,
55.47    on the 16th day of March, Anno Domini, one thou-
.25    sand eight hundred and fifty-seven, recovered judgment against Holland W. Osgood, and Alexander Hamilton, and Gouveneur Morris, trustees of the Vermont Valley Railroad, and also trustees of Holland W. Osgood, debtors, for the sum of fifty-two dollars and eighty-seven cents damages, and for the sum of two dollars and sixty cents costs of suit, as appears of record, whereof execution remains to be done; Therefore, by the authority of the State of Vermont, you are hereby commanded that of the goods, chattels or lands of the debtors, within your precinct, you cause to be levied (and the same being disposed of as the law directs), paid and satisfied unto the creditor the aforesaid sums, being fifty-five dollars and forty-seven cents ($55.47) in the whole, with twenty-five cents more for this writ, and thereof, also satisfy yourself for your own fees.    Fail not, and make due return of this writ with your doings thereon, within sixty days from this date.    Dated at Rockingham, in the county of Windham, the first day of April, in the year of our Lord one thousand eight hundred and fifty-seven.

JOHN H. CAMPBELL, Justice of the Peace."

The following additional facts were agreed upon by the parties: Hugh H. Henry, Alexander Hamilton and Gouveneur Morris,

were at the time of the service of, and the default upon the original writ in *Wilder* v. *Osgood and Trustees*, trustees of the property of the Vermont Valley Railroad Company, and were running that road in Windham county in this State.   Henry then resided in Chester in this State, and Hamilton and Morris resided in the city and State of New York.   The writ *Wilder* v. *Osgood and Trustees*, was duly issued by, and returned to, Justice Campbell, and no other service thereof was made on the trustees of said railroad company, than by the delivery of a copy to Green, as above mentioned.   On the 25th of March, 1856, these railroad trustees appointed Henry F. Green their agent, upon whom process against said trustees might be served.   This appointment was filed in the office of the county clerk in Windham county, on the day it was made, under an act of the legislature of this State approved November 14, 1854, and entitled, " an act relating to the service of process on non-resident trustees of railroad corporations.*   This appointment had not been revoked at the time of the service of the original writ of *Wilder* v. *Osgood and Trustees*. At the time of service of that writ, Green was the clerk of the railroad trustees, and was resident at Rockingham in Windham county, but was not in the employment of the trustees as station agent, or depot master.   After this appointment of Green as such agent of the trustees, and up to the service of the original writ of *Wilder* v. *Osgood and Trustees*, Green was treated by Hamilton and Morris as their legally authorized agent to receive service of process against them.

* Which is as follows : " The trustees under any assignment, mortgage, or other transfer, made and executed by any railroad company in this State, and any lessee or lessees of any such railroad company, not resident in this State, who shall hold possession of the property of such railroad company, or manage the running of the road of such company, under and by virtue of such assignment, mortgage, lease, or other transfer, shall, in case they reside without this State, appoint one person resident in this State, upon whom service of every kind of process known to the laws of this State, may at any time be made; and shall, in the month of January in each year, file in the office of the clerk of the county court, in every county, through which such road shall pass, a certificate signed by such trustees, or lessees, designating the name and place of residence of the person thus appointed ; and all such service of process upon said person so appointed, shall be a legal service of the same on such trustees or lessees; and if such trustees or lessees shall neglect to appoint such agent, and file such certificate, the leaving, with any station agent or depot master, in the employment of such trustees, or lessees, of a copy of any legal process against such trustees, or lessees, by any proper officer, shall be deemed legal service of such process upon such trustees, or lessees, and shall have the same effect, as though personal service of such process had been made upon such trustees or lessees.".   Acts of 1854, No. 29, p. 32.

The county court, at the April Term, 1858,— REDFIELD, Ch. J., presiding,— rendered judgment for the defendants, to which the plaintiffs excepted.

*Stoughton & Grant*, for the plaintiffs, contended,

1. That the statute of 1854, acts of 1854, page 32, did not authorize the rendition of judgment *by default*, against non-resident railroad trustees, unless personal notice to them of the pendency of the process was also proved, and cited Comp. Stat. 259, sec. 25, which they insisted was not repealed, either expressly or by implication, by the act of 1854.

2. That Green was not an agent upon whom service could be made under the act of 1854, because that act required a certificate of the appointment of agent to be filed in the county clerk's office in January in each year, and in this case the only certificate filed was filed in March, 1856. One should have been filed in January, 1857, which intervened between the first appointment and the service of the process in question.

3. That the execution was entirely irregular and illegal upon its face.

4. Judgment was taken against only two of the *three* trustees, summoned in their joint capacity as trustees of the Vermont Valley Railroad Company. No legal service was made upon Henry. The action could not therefore legally proceed against any of the trustees, until measures had been taken to bring them all into court.

*R. W. Clarke* and —— *Carpenter*, for the defendants.

1. The act of 1854, No. 29, expressly provides that service upon the agent, like that in the present case, shall have the same effect as personal service upon the principals.

2. The execution is somewhat irregular and informal, but not fatally defective and void; *Rider* v. *Alexander*, 1 D. Chip. 267; *Betty* v. *Brown*, 16 Vt. 669.

BARRETT, J. I. In the first place, we think Green, at the time the trustee process was served, was the agent of these plaintiffs under the statute of 1854. He was duly appointed by them

in March, 1856. He thenceforward continued to act for them in that capacity. His appointment was not revoked by them. They continued to treat him as their agent under the statute, down to the time said trustee process was served. It will not do, as against all this, to hold that because the plaintiffs did not renew the certificate in January, 1857, according to the terms of the statute, this agency ceased by operation of law. We therefore deem the service of the trustee process legal and valid.

II. In the next place, we think there is no ground for doubt, either upon the obvious purpose and policy of the statute, or upon its express provisions, that the service of the process had " the same effect as though personal service of said process had been made upon such trustees."

If personal service had been made, they would have had personal notice. The service upon the agent, being the same in effect as service on the trustees, must be held to be the same as personal notice. The design of the statute is to make the agent the representative of the personal presence of his principals for the purpose of the service of process, and the delivery of a copy to him, tantamount to the delivery of a copy to them. He is *their* agent in this behalf, and they take the hazard of his faithfulness in giving them information of the service of the process.

As they did not appear, it was proper, so far as the matter of the service was concerned, to take the default against them.

III. But it is objected that, as the official relation of the three railroad trustees was joint, and they were made the subject of the process in that relation, the fact that Henry was not served with the process, nor embraced in the judgment, renders that judgment void as against the two plaintiffs in this suit. We are unable to yield to this view.

Probably the *non-service* on Henry might have been interposed by the other two against the rendering of a judgment against them, if they had seen fit to appear and take the objection in a proper mode. But as they did not appear before the justice, we think there is no warrant of law for holding that *non-service* to be such an irregularity as to render the judgment and the execution void, and proper to be reached and controlled by *audita querela.*

IV. The execution is rather an awkward document, and quite

obnoxious to criticism; yet, we do not deem it so defective as to be void.

It may, by a warrantable charity, be regarded as answering the requirements of the law, and it is clear that the defendants are in no jeopardy of being oppressed by it beyond their liability on the judgment set forth in its recital.

The intent to set forth a judgment against Hamilton and Morris, as the trustees of Osgood, is manifest on its face. It seems to us allowable, both by the laws of grammar, as well as of legal intendment, to supply the word "*against*" in the recital next before the name of Alexander Hamilton. If so done, the recital of the judgment would then be strictly according to the fact, viz: that it was against Osgood, and against Hamilton and Morris as the trustees of said Osgood. By thus supplying the word "against," the names of Hamilton and Morris become separated from that of Osgood, and the word "*debtors*" would then be grammatically applicable to Hamilton and Morris, and would describe them truly in their character, relatively to Wilder under the judgment; for they become debtors by virtue of the judgment, in the strict legal sense; *Chandler* v. *Warren*, 30 Vt. 510.

In this view the word "*debtors*" in the precept of the execution, would have the same meaning and application as in the recital, and would confine the *precept* to Hamilton and Morris alone.

The judgment of the county court is affirmed.